IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMANUEL JONES | : |
| | : |
| Plaintiff, | : |
| v. | : C.A. No. 06-674 |
| | : |
| OFFICER NORRIS and NEW CASTLE | : |
| COUNTY POLICE DEPARTMENT, | : |
| | : |
| Defendants. | : |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S REQUEST FOR DISCOVERY

1.  I, as the Plaintiff Emanuel H. Jones, would want to know if the defendants in my case to release information for my discovery at trial.

RESPONSE: Objection. This request is vague and ambiguous and Answering Defendants do not know what information the plaintiff is attempting to discover.

2.  Do the Defendants Officer Norris and the New Castle County Police Department have any past and pending Complaints and lawsuits against them for excessive force, racial discrimination and threatening?

RESPONSE: Objection. The term, 'threatening' is vague and ambiguous. Further objection to this request as it is overly broad and contains no reasonable time frame. By way of further answer, and without waiving objections, Defendant Officer Norris has no other lawsuit pending against him. By way of further answer, and without waiving objections, Answering Defendants provide the following list of cases that involved allegations of excessive force:

Balko v. Walther & NCC ; filed in District of Delaware, No. 02-cv-237 GMS; filed April 2002; dismissed with prejudice October 2005.

Brooks v. Price & NCC; filed in District of Delaware, No. 02-230 KAJ; NCC prevailed; plaintiff appealed; 3d Cir. affirmed.

Henry v. Donovan & NCC; filed in District of Delaware, No. 03-663 GMS; filed August 2003; dismissed March 2005.

Joyner v. NCC; filed in District of Delaware, No. 03-332 GMS; filed April 2004; dismissed December 2004.

Leeds v. Cale & NCC; filed in District of Delaware, No. 04-1475; filed September 2002; dismissed January 2006.

Watkins v. NCC, et al.; filed in District of Delaware, No. 03-791 KAJ; filed April 2003; dismissed July 2005.

3.   How long has Officer Norris been a police officer for New Castle County?

RESPONSE: Twelve years in July 2007.

4.   Does New Castle County Police Department have a policy of when to use a taser and when not to use a taser?

RESPONSE: Objection to the form of the request. By way of further answer, and without waiving objections, please refer to enclosed documents.

5.   Does the New Castle County Police Department have a policy for its officers not to racially discriminate and not to threaten anyone being arrested?

RESPONSE: Objection. The term, 'threatening' is vague and ambiguous. Further, objection to the form of the request. By way of further answer, and without waiving objections, please refer to enclosed documents.

6.   How many Complaints and lawsuits pending against New Castle County Police Department and Officer Norris?

RESPONSE: Objection. This request is ambiguous. Further, the request is overly broad and contains no reasonable time frame. By way of further answer, and without waiving objections,

in addition to the response to Request No. 2, Answering Defendants provide the following information:

Batiste v. Lee & NCC; filed in Delaware Superior Court, Kent County; No. 04C-07-001 WLW; NCC dismissed from case December 2004.

Boulden v. Turner, et al; filed in Delaware Superior Court, No. 04C-1-31 CLS; filed October 2004; dismissed October 2005; alleged unlawful arrest.

Burks v. NCC et al.; filed in District of Delaware; No. 04-165 KAJ; filed April 2004; NCC dismissed August 2005; alleged illegal search.

Couden v. Freebery & NCC, et al.; filed in District of Delaware, No. 03-369; filed April 2003; NCC brought in as defendant to suit in June 2003; alleges various violations (wrongful detention, unreasonable search and seizure, false arrest, personal injury and property loss).

Wilberger v. Joseph & NCC; filed in District of Delaware, No. 03-631 SLR; filed July 2003; dismissed May 2005; alleged false arrest.

NEW CASTLE COUNTY OFFICE OF LAW

*Julie M. Sebring*

Julie M. Sebring, Esq. – DE ID #2259
Assistant County Attorney
New Castle County Government Center
87 Read's Way
New Castle, DE 19720
(302) 395-5130

Dated: May 30, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMANUEL JONES | : |
| | : |
| Plaintiff, | : |
| v. | : C.A. No. 06-674 |
| | : |
| OFFICER NORRIS and NEW CASTLE | : |
| COUNTY POLICE DEPARTMENT, | : |
| | : |
| Defendants. | : |

**CERTIFICATE OF SERVICE**

I, Julie M. Sebring, Esquire, hereby certify that on the 30th day of May, 2007, two copies of the Defendants' Response to Plaintiff's Request for Discovery were served by First Class U.S. Mail to the following:

> Emanuel H. Jones - #557338
> Howard R. Young Correctional Institution
> 1301 East 12th Street
> P.O. Box 9561
> Wilmington, DE 19809

NEW CASTLE COUNTY OFFICE OF LAW

*Julie M. Sebring*
Julie M. Sebring, Esq. – DE ID #2259
Assistant County Attorney
New Castle County Government Center
87 Read's Way
New Castle, DE 19720
(302) 395-5130

# DIRECTIVE 1

# LAW ENFORCEMENT ROLE AND AUTHORITY

Revised 05/01/04

## I. LAW ENFORCEMENT AGENCY ROLE

A. The New Castle County Police Department requires that each organizational component, and the agency as a whole, prepare written goals and objectives, which shall be formulated and updated annually, prior to December 15. Agency goals and objectives shall be distributed to all personnel.

B. Each unit, section, and branch commander, with input from other unit employees, will submit their annual goals and objectives to aid in the development of the Agency's annual goals and objectives.

C. Each organizational component shall submit annually, (prior to December 15) to the Chief of Police, a written evaluation of the progress made toward attaining its goals and objectives.

D. All personnel, prior to assuming sworn status, will take and abide by an oath of office to enforce the law and uphold the Constitution of the United States of America, the Constitution of the State of Delaware and the laws of New Castle County. **(1.1.1)**

E. All sworn officers will abide by the "Code of Ethics," which is as follows:

"As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property, to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all men to liberty, equality and justice."

"I will keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint, and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my agency. Whatever I see or hear of a confidential nature or what is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty."

"I will never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my decision, with no compromise for crime and with relentless prosecution of criminals. I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities."

I recognize the badge of my office as a symbol of public faith, and I accept it, as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession ... law enforcement." **(1.1.2)**

**DIRECTIVE 1 – Law Enforcement Role and Authority**

      Z.  Warrantless Arrests:

            1.  Pursuant to DE Code 11, Sec 1904, an officer may arrest a subject without a

8

## DIRECTIVE 1 – Law Enforcement Role and Authority

warrant for a misdemeanor if he has reasonable grounds to believe that the subject committed a misdemeanor:

a. In his presence,

b. Out of his presence and outside the state, if officers from the state in which the crime was committed request an arrest and an immediate arrest is required to assure apprehension.

c. Out of his presence and within the state for shoplifting, the arrest is based on personal investigation at the scene of arrest, the store employee who observed the crime is present, and the accused subject is still present at the scene.

d. Out of his presence and within the state for any misdemeanor involving physical injury, or threat thereof, or attempted or actual illegal sexual contact.

e. Out of his presence and within the state for a violation of Protection From Abuse (PFA) order.

f. Out of his presence and within the state for a violation that occurred on school property. (1.2.5)

2. An officer may arrest a subject without a warrant for a felony committed within or without the state whenever:

a. He has reasonable grounds to believe the subject has committed a felony, whether or not a felony has actually been committed.

b. He discovers after arresting a subject that the subject has committed a felony, regardless of whether the officer had reasonable grounds to suspect the subject committed the felony in the first place.

3. While on duty, officers shall affect an arrest whenever the elements for a felony exist, unless the Attorney General directs otherwise, in writing. (1.2.5)

AA. Arraignments:

Officers shall arraign a defendant whenever:

1. The defendant is charged with a felony.

2. The defendant refuses to sign the agreement to appear.

3. The defendant fails to present sufficient identification.

4. The defendant has a history of failure to appear or pay fines.

5. The defendant has an extensive criminal history record.

6. The arrest is for a drug violation, other than simple possession of marijuana or hashish.

7. Probable cause is established for any felony or misdemeanor in a domestic disturbance, regardless of the desire of the alleged victim.

8. The arrest is for a misdemeanor sex offense.

9. The arrest is made for an outstanding warrant.

10. The defendant is not a resident of Delaware.

11. All Hate or Hate related crimes.

BB. Detainees under the Influence of Drugs:

1. Pursuant to DE Code 11, Sec. 4213, when an arresting officer suspects a person charged solely with misdemeanors is under the

9

## DIRECTIVE 1 – Law Enforcement Role and Authority

influence of drugs, he shall inform the arrestee of his right to request immediate admission to a drug detoxification center. Upon such a request, the arresting officer shall, as soon as conditions at the scene of the arrest permit and transportation is available, arrange to have the arrestee transported to the nearest available drug detoxification center.

2. If the detainee declines to be taken to a detoxification facility, the officer shall note this choice in his report and take the detainee to the nearest medical facility for evaluation.

CC. Juveniles:

An officer may issue a summons to a juvenile for an on-view misdemeanor, in lieu of physical arrest, detention, and immediate arraignment.

1. The officer may release the juvenile to the parents, or appropriate responsible adult.

2. The officer may release the juvenile at the scene of the arrest if approved through telephone contact with a parent or guardian. **(1.2.6)**

DD. Arraigning Intoxicated Adult Prisoners:

Whenever possible, the arresting officer will attempt to notify a friend or relative of the suspect to take custody of the individual in matters not requiring immediate arraignment. The suspect will be issued a summons and, in D.U.I cases, a notice of revocation/temporary license, and a copy of any breath tests administered, if applicable.

EE. Female Detainees:

Female detainees shall appear before a judge as soon as possible at the appropriate court. If bond surety, or intoxication prevents arraignment or release, the detainee should be transferred to women's prison or the detoxification center.

FF. Release of Arrestee:

Detainees shall be released from custody as soon as possible. If a warrant is obtained, the detainee shall be arraigned before the appropriate court as soon as possible.

GG. Arraignment:

Officers shall arrange for the arraignment of detainees before the proper court at the first possible opportunity.

HH. Privilege of Detainees/Use of Telephone:

Officers should give detainees the opportunity to make telephone calls as soon as possible to try to make bail, unless such calls jeopardize a current investigation.

II. Detainees under the Influence of Alcohol:

1. State Law establishes that intoxicated persons and alcoholics are not subject to criminal penalties solely because of their consumption of alcoholic beverages, but should instead be afforded a continuum of treatment.

2. Any person arrested solely for Public Intoxication (De. Code 11, Sec. 1315), shall be immediately transported and admitted to a detoxification center as required by Del. Code 11, Sec 4210. The defendant's copy of the summons for violation of Del. Code 11, Sec 1315, will be left at the center. The officer will ensure copies of the summons required by the Justice of the Peace Court will be at the court within two days of the arrest.

3. Detainees incapacitated (unconscious) by alcohol, intoxicated (one whose mental or physical functions are substantially impaired), or with a blood-alcohol content (BAC) of .25 or greater should be transported to the nearest available medical facility for examination before incarceration.

4. Intoxication or the consumption of an alcoholic beverage shall not serve as the sole justification for incarceration. Whenever possible, an intoxicated prisoner should be released on a summons and otherwise

## DIRECTIVE 1 – Law Enforcement Role and Authority

treated in accordance with the Uniform Alcoholism and Intoxication Treatment Act (Title 16 Chapter 22 Del. Code). If the issuance of a summons is not appropriate, the detainee should be presented for arraignment with an explanation of the detainee's condition to the arraigning justice of the peace. If release is not authorized during the arraignment, the detainee will be held until court specified conditions of release or return for hearing are met.

5. If an intoxicated detainee otherwise subject to release declines transportation home (within a reasonable distance as approved by the on-duty supervisor), transportation to a treatment center, or release to the care of a person of suitable age and discretion, the on-duty supervisor may direct incarceration for the safety of the detainee or until the arrival of a person who can assume responsibility for the detainee's safe transport from custody. The need for incarceration and explanation of the absence of alternatives will be included on incarceration records and in the report covering the arrest for which the detainee was apprehended.

6. A detainee held for arraignment, due to intoxication or the use of alcohol, shall be presented to the court as soon as any specific conditions imposed by the court are met. A detainee held for their personal safety due to intoxication will be released as soon as the on-duty supervisor determines that they no longer appear to be intoxicated. A specific reduction of BAC to a level less than .05 will not be required unless imposed differently by the arraigning court.

JJ. Discretion:

Each officer must use discretion when deciding whether to warn, release after issuing a summons, or arraign a subject for a violation of the law. In making this decision, the officer must rely on past experience, the circumstances surrounding the offense, the offender's criminal history, and applicable laws. When considering whether a warning is preferable to enforcement action, offenses representing ongoing community problems (e.g., noise and alcohol violations) and crimes that result in injury should receive greater enforcement action than other less serious crimes. **(1.2.7)**

KK. Criminal Summons:

An officer may issue a summons for any arrest under New Castle County Code or after warrantless arrest for any Class "A", or less misdemeanor under State Code. **(1.2.6)**

LL. Strip and Body Cavity Searches:

1. Strip and body cavity searches shall only be done when an officer has reasonable cause to suspect contraband may be present.

    a. Authorization to conduct strip and body cavity searches must be obtained from the on-duty Patrol Commander. The supervisor will assess the situation and determine whether a search warrant is necessary. **(1.2.8 a)**

    b. An officer who is the same sex as the person being searched shall do these searches in private. **(1.2.8 b)**

    c. Any officer conducting a body cavity search will document the action in his/her report. **(1.2.8 c)**

MM. Bias Based Profiling:

1. Officers are prohibited from exercising or participating in the practice of bias based profiling in traffic contacts, field contacts and in asset seizure and forfeiture efforts. **(1.2.9 a)**

2. Officers are trained in bias based profiling issues including legal aspects. **(1.2.9 b)**

11

## DIRECTIVE 1 – Law Enforcement Role and Authority

3. Corrective measures will be taken if bias based profiling occurs. **(1.2.9 c)**

4. The Agency will conduct an annual administrative review of department practices including citizen concerns. **(1.2.9 d)**

### III. USE OF FORCE

A. Members of the New Castle County Police Department will use only the force necessary to affect lawful objectives. An officer obtains the right to use force, including deadly force, in certain situations as defined by Title 11, Del. Code, Section 467. All officers shall completely familiarize themselves with this section of the law. **(1.3.1)**

B. Whenever an officer employs deadly force, there should be no question as to what person the deadly force is being directed against or that the officer has a legal right to employ such force. In all cases, the officer should believe the force employed creates no substantial risk of injury to innocent persons. The officer must have a clear line of fire to discharge the firearm. The provisions of this Directive will govern accidental use of deadly force. The use of deadly force is only justified in the following situations:

   1. The officer has a reasonable belief that the person to whom deadly force is being directed is about to inflict death, or serious physical injury, upon the officer.

   2. The officer believes the person to whom deadly force is being directed is causing or is about to cause death or serious physical injury to another individual. **(1.3.2)**

      a. Definition: REASONABLE BELIEF - The facts or circumstances the officer knows, or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

      b. Definition: SERIOUS PHYSICAL INJURY - That which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ.

C. The use of deadly force against a "fleeing felon" must only be used when the officer believes that the person to whom deadly force is being directed is causing or is about to cause death or serious physical injury to the officer or another individual.

D. If during the use of deadly force, or less than deadly force, any person(s) is injured; they shall be taken to the appropriate medical facility for treatment, if necessary. Officers present shall render any necessary first aid until the arrival of emergency medical personnel. **(1.3.5)**

E. In all arrest situations where it is necessary to place the defendant on the ground in order to successfully take him into custody, the arresting officers will, as soon as safely possible, put that defendant into an upright sitting or standing position.

F. In any arrest situation in which the officer recognizes that the defendant exhibits signs of Excited Delirium, the arresting officer should use extreme caution. The officer should consider using multiple officers if available and take the subject into custody as quickly as possible. Officers should note that many of the tools available to them, such as pepper spray, the ASP baton, or pressure points, will be ineffective with a subject in a state of Excited Delirium. Once the defendant is in custody, officers will follow the procedure set forth in Section E, but also immediately call for an ambulance and have the subject transported to the nearest medical facility. Medical clearance documents must be obtained from the treating physicians.

G. All officers will be issued copies of, and be instructed in, the policy on use of deadly force while in the police academy before being

12

## DIRECTIVE 1 – Law Enforcement Role and Authority

authorized to carry a firearm.

H.  Officers, prior to being issued weapons (either lethal or less than lethal), shall receive and be instructed in the policies on use of force (C.A.L.E.A. standards 1.3.1 through 1.3.5). The Human Resource Unit shall retain records of the issuance of such policies and the instruction pertinent to those policies. **(1.3.12)**.

I.  All officers will submit a written report, including a Departmental Force or Injury Report anytime the officer:

   a. Discharges a firearm, for other than training purposes; **(1.3.6 a)**

   b. Takes any action that results in, or is alleged to have resulted in, injury or death of another person; **(1.3.6 b)**

   c. Applies force through the use of lethal or less-than-lethal weapons; **(1.3.6 c) (1.3.12)**

   d. Applies any force as defined by Departmental Directives; or **(1.3.6 d)**

   e. Takes any person into custody that has a prior injury.

J.  All submitted Force or Injury Reports, along with the corresponding incident report, will be reviewed by the officer's immediate supervisor and then forwarded up the chain of command to the Chief of Police for review. After review by the Chief of Police, the reports will be forwarded to the Professional Standards Unit for review and storage. **(1.3.7)**

K.  Officers are prohibited from discharging their firearm in the following instances:

   1. When it appears likely an innocent person will be hit,

   2. When in a crowded area,

   3. At a suspect(s) who is holding an innocent person hostage when firing would endanger the hostage or any other innocent person,

   4. At a motor vehicle and/or the occupants therein, unless as a last resort and only when the operator of the vehicle is directing the vehicle as deadly force against the officer or other innocent persons and the officer believes employing deadly force creates no substantial risk of injury to innocent persons.

   5. When the officer does not have a clear line of fire.

   6. Warning shots are prohibited. **(1.3.3)**

13

**DIRECTIVE 1 – Law Enforcement Role and Authority**

    M. Force Other Than Deadly:

        1. An officer will use only the force necessary to affect lawful objectives.

        2. All officers are issued the following items of equipment to assist in making a lawful arrest when resistance is encountered, to prevent an escape, or for the purpose of protecting themselves or a third party from bodily harm: **(1.3.4)**

            a. Aerosol Pepper Projector Operation (Memorandum 92-143 First Defense MK-IV)

                The canister must be held in an upright position in either hand using the index finger or thumb to aim and dispense the spray.

                (1) Officers will not remove the identification and instructional label from the canister.

                (2) The officer should shoot one to two second bursts, aiming directly at the persons face (eyes, nose, mouth). The effective range of the spray is 6 to 8 feet. Avoid spraying at distances less than three feet, unless circumstances are unavoidable.

**DIRECTIVE 1 – Law Enforcement Role and Authority**

    (3) Avoid discharging the spray into a head wind, which could cause the officer to be contaminated.

    (4) Once the person has been incapacitated, the officer should restrain the person by using handcuffs or other restraining devices to prevent secondary injury.

        a. Any affected area should be flushed with water to remove the influence of the irritant.

        b. Although medical treatment is not required, it should be afforded, if requested. **(1.3.9 a)**

  b. ASP Tactical Straight Baton (Friction LOC F-26")

    1. The baton is a defensive weapon issued to Agency police personnel for use in situations where other Agency-issued equipment is not effective and/or not practical to use.

    2. The baton will be carried tip down in the side break scabbard by all uniform police personnel when wearing the Sam Browne belt.

    3. The baton will be carried on the person of non-uniformed police personnel when performing operational oriented functions.

    4. The baton is to be used by police personnel in the following manner for defense from attacks, and to counterattack violent, aggressive, or unruly assailants:

        a. To block kicks, punches, and strikes from assailants.

        b. To strike the assailant when necessary in the following manner:

          1. Weapon and Reaction Closed Mode Strikes will be directed at a downward 45 degree angle to center mass of the assailant's body.

          2. The Closed Mode Straight Strike will be directed forward to center mass of the assailant's body.

          3. Weapon and Reaction Open Mode Strikes will be directed at a downward 45 degree angle to center mass of the assailant's weapon delivery system, those being the assailant's arms and legs.

          4. The Open Mode Straight Strike will be directed forward to center mass of the assailant's body.

          5. The Rapid Response Strike will be directed at a downward 45 degree angle to center mass of the assailant's weapon delivery system, those being the assailant's arms and legs.

  c. The baton will not be used to strike the below listed areas on an assailant, unless the officer has justification to use deadly force. Strikes to these areas may produce injuries that are potentially fatal, while not immediately terminating the assailant's resistance:

    1. Head, neck, spine, sternum, and groin. **(1.3.9 a)**

  c. Flashlights:

    (1) Agency flashlights may be issued to and carried by members of the New Castle County Police Department. Members who possess other approved flashlights may use them

16

**DIRECTIVE 1 – Law Enforcement Role and Authority**

      in place of the Agency issued flashlights.

(2) The primary application of the flashlight is as a source of illumination.

(3) The flashlight is not a weapon, nor is it intended to replace the baton or pepper spray, although there may be exceptional situations where it may be necessary to use it as a defensive instrument:

    (a) When a situation of this nature arises, the flashlight shall be used in the same manner and under the same rules as those governing the expandable baton.

(4) The flashlight should be carried in the vehicle on all shifts.

(5) Small flashlights, such as the Mini-mag light and non-portable searchlights powered through the vehicle cigarette lighter, may be used in addition to the issued or alternative flashlight.

d. Handcuffs:

(1) Officers are issued handcuffs to be used to restrain and secure persons in police custody, not as an offensive weapon.

(2) Officers may purchase one additional pair of handcuffs for use while on-duty.

    a. These handcuffs will be consistent in quality to those issued by the Agency.

    b. An inspection and approval of these handcuffs by a Certified Defensive Tactics Instructor will be required prior to being carried.

    c. If carried on the Sam Browne belt, handcuffs will be carried in a black leather case consistent with those issued by the Agency.

(3) The Agency recognizes that it cannot predict each and every situation that will require the use of handcuffs. The final decision as to the need for use of handcuffs is most frequently left up to the best judgment and discretion of the arresting or transporting officer's assessment of the prisoner and situation. Agency members will, however, be held responsible if an escape is affected due to the lack of use of handcuffs.

(4) Handcuffs will be used in the following situations:

    a. All felony arrests.

    b. Persons who are known to have resisted arrest or have assaulted police officers in the past, regardless of present charge.

    c. Unruly, hostile and extremely argumentative persons, regardless of present charge.

    d. Persons whom the arresting officer has reason to believe will attempt to escape or cause harm to themselves or others, regardless of the present charge.

(5) Practices to be avoided when using handcuffs:

    a. Do not handcuff a prisoner to a fixed object (sign post, automobile bumper, etc.).

17

## DIRECTIVE 1 – Law Enforcement Role and Authority

    b. Do not handcuff a prisoner's hands in front (unless they are suffering from a deformity or other disability).

    c. Do not handcuff yourself to the prisoner.

    d. Do not use handcuffs as a "come-along."

    e. Do not forget to double-lock and check the handcuffs after they have been applied.

    f. Do not search a prisoner before handcuffing them, unless the situation dictates otherwise.

    g. Do not tighten the handcuffs in such a fashion they pinch the skin, restrict circulation, or intentionally cause the prisoner unreasonable discomfort.

e. Knives:

(1) Knives are not issued by the Agency, but officers, may at their option, carry a folding blade pocketknife or Buck knife.

(2) If carried, the blade will not be longer than 4" in length.

(3) Officers may carry the knife on the gun belt in a plain, black leather knife case; or in a pocket, completely concealed (no clipping to uniform)

(4) Agency members are given the authorization to carry a knife for use in situations requiring a cutting edge that may arise in the performance of their duties (i.e. cutting rope, etc.)

(5) The knife is not to be carried for the specific purpose of being used as a defensive weapon.

(6) The New Castle County Police Department recognizes certain extreme and exceptional circumstances may arise requiring the officer to employ the equipment authorized in this section as a deadly weapon and, its use may, in fact, result in serious physical injury or death.

(a) These circumstances would be restricted to those requiring the use of deadly force and where it would not be practical or possible for the officer to use their handgun and/or shotgun.

(b) The following defensive weapons are strictly prohibited:

(1) Sap Gloves;
(2) Brass Knuckles;
(3) Slapjacks;
(4) Blackjacks; and,
(5) Stun Devices.

18